All right, the next case on the docket is Sheldon Cho v. H.I.G. Capital, and Alan Wachs is here for the appellants, cross-appellees. Jeffrey Bershovsky is here for the appellees and the cross-appellants, H.I.G. Capital. And Mr. Wachs, you may proceed. Thank you, Your Honor. May it please the court, Alan Wachs here on behalf of Dr. Sheldon Cho and Dawn Baker, and we are asking this court to align itself with the First Circuit in determining that under Section 3730B5 of the False Claims Act, that once a related action is no longer pending, dismissal is not required and that the defect, such as it is in the claim, can be resolved through a Rule 15 supplement or amendment. We alternatively ask that as it relates to Dr. Cho and Dr. Baker's lawsuit against H.I.G., that the court determine that it's not related to the Ashton lawsuit for the purposes of Section 3730B5. So you're asking us to accept the First Circuit's reasoning and reject the Second and the District of Columbia Circuits who say the opposite, that the cases would be barred under these facts. Is that right? Yes, Your Honor, that's correct. I'm sorry, go ahead. I mean, the statute uses the word, I mean, the precise language is a relator may not bring, that's the key word, a key term action when a related action is pending. And it, I mean, it seems pretty straightforward that bring means to sue or institute legal proceedings. I understand that, Your Honor. And at the time the initial complaint was filed, the Ashton lawsuit was pending. The question that they, that that particular reading of the statute doesn't answer, but when read in paramateria with the entirety of Section 3730B5 does, 3730 rather, becomes clear is what happens if there's a violation of that? Does that create a taint that forever prevents that from being fixed except by dismissal and refiling? And so, for instance, if we look over at Section E4 of that same statute, which is the public disclosure bar that appears under the language, certain actions barred, the Congress has explicitly said the court shall dismiss in E4A. That language shall dismiss isn't here. We have silence. And so we respectfully submit that the First Circuit got it right in the face of that silence. Rule 15D, which does say, which allows supplementation for events subsequent, Rule 15D says that supplementation is allowed even where the original claim has a defect in it. And that's been applied both for treating defects, but also jurisdictional defects. It doesn't matter. Let me ask, what was the purpose for amending the complaint? At which time, Your Honor? The complaint was amended twice. So, the time that the complaint was amended such that the first to file bar is queued. Yes, sir. That was to both more specifically allege and make clear the claim against Higg after the government had settled without all of the defendants in the Ashton and the Baker lawsuits except for Higg. And secondly, as paragraph 53, to address the fact that the Ashton lawsuit is no longer pending. So, in that particular case, paragraph 53 of that second amendment complaint, we allege the Ashton lawsuit has not been settled. So, this is the last lawsuit pending. So, it did both of those things, Your Honor. So, you're telling me then that a relater can bring a fair claims act claim while a similar or related action is pending, wait until that action is resolved and over, and then just amend your complaint and avoid the failure to file bar? Uh, yes, Your Honor. The issue is unlike the public disclosure bar where we're trying to present parasitic relators by filing claims based on things out in the public or otherwise known. In the case of the B5 rule, the complaints are under seal. So, at the time, Dr. Cho and Don Baker are filing their complaint, they don't know there's another lawsuit. They filed under seal. And it's not known until 2020 that there's actually a prior related bar. And so, then the question becomes once that lawsuit is no longer pending and the Supreme Court in Kellogg has made clear that once it's no longer pending, that is no longer an obstacle to proceeding forward with or can we fix it by supplementation? And here's why it's important. And all three circuits have sort of addressed this issue. The Decent Circuit and the Second Circuit disagree with this, but I think this gets to the heart of the purpose of the False Claims Act. And that is we filed the I think before you talked about Kellogg. Yes, Your Honor. But in Kellogg, in that case where Justice Alito wrote about the word pending, I mean, your interpretation of pending is sort of at the time that the lawsuit was filed, right, there was the Ashton lawsuit, correct? Yes, Your Honor. Right. But the issue for us here is really the use of the word bring. And we are bound by our existing precedent where we specifically have held in multiple opinions that the use of the word bring means commence, initiate a lawsuit. So, I don't see how we can distinguish that. I don't think you have to, Your Honor. We acknowledge that you had a lawsuit when we first filed this lawsuit, a lawsuit we didn't know about, but it was there. We get that. The question, and Kellogg doesn't answer this question, the First Circuit answers it, and we respectfully submit that this is the right answer. The question is whether Rule 15d will allow by supplementation you to now say that condition proceeding to the suit has now been satisfied even if it wasn't satisfied when the suit was first filed. And we respectfully submit that it is. There's a case out of the Supreme Court that all three circuits cite to and that's the Diaz, Matthews v. Diaz decision where a lawsuit was filed under the Social Security Act and it was premature. The conditions proceeding to that suit hadn't been filed and the Supreme Court said that's okay. You can now by supplementation since the condition happened after the lawsuit was filed and was satisfied, you can fix it. And the language in 15d expressly recognizes that you can fix a claim even where the claim when originally brought was defective by addressing the satisfaction of that defect by events subsequent. And that's exactly what happened in this particular case. And the reason why it matters in this particular case, refiling versus fixing it by supplementation is the statute of limitations is going to lead us to a result that is in fact inconsistent with the purpose of the False Claims Act if we don't allow supplementation. We filed the lawsuit in 2017 alleging as it relates to Hague a conspiracy that really starts in 2011 with the formation of Logan Labs. And we can reach that conspiracy with the 2017 filing and the origins of it. If in fact we're forced to dismiss and to refile, we now are refiling in 2021. Even if we had refiled back in 2020 when the complaints are unsealed, we're now filing in 2020 when the complaints are unsealed. We're not going to be able to reach the origins of the conspiracy. We are effectively now giving, accepting the allegations as true. We're giving the fraud fees or a release for three to four years worth of damages, a release that the government in this very case refused to give them when it settled with the other defendants. And that runs contrary to the purpose of the False Claims Act, which is to get recoveries for the government. And in fact, in Kellogg, Alito writing in that unanimous opinion... But the schemes are essentially the same, right? Both HIG and surgery centers are accused of referring patients to Logan Labs for expensive and unnecessary testing to be paid for by Medicare with kickbacks to the doctors. How's the fact in your case different than the fact in the Ashton case? Sure. So they both center around the UDT testing and the medically unnecessary UDT testing. The difference is in our particular case, we allege the HIG conspiracy. We also talk about Tampa Bay or Tampa Pain Relief and a couple of the other individual entities. And we bring to the government's attention this conspiracy and the architect... Well, the government already knows about it. The government did not know about HIG, we respectfully submit. We brought HIG's role in this to the government's attention. And one need only look at... But the settlement agreement talked about HIG, did it not? In the Ashton case? Well, that settlement was in both cases, Your Honor. If you look at that settlement agreement, they talk about the Florida Relators and they talk about Pennsylvania Relators. We are the Florida Relators, Baker and Schiller, the Florida Relators. The Pennsylvania Relators were the Ashton Relators. And so the government in that case recognized that, in fact, we were bringing new information to their table. They protected the Baker and HIG Relators. There was a recovery for us. There were... May I ask a question about Rule 15D, which talks about the court permitting a party to serve a supplemental pleading, setting out a transaction occurrence or event that happened after the date of the pleading to be supplemented. What exactly occurred after the original complaint was filed that needed to be supplemented that was... It seems to me that that rule, that supplemental pleading rule, is to allow for supplemental pleading in order for you to cure a defect in stating a claim or a defense. You clearly stated a claim or a defense. You stated a claim. The issue is you were the first to file a rule created a problem for you. So what did you do or what occurred afterwards that would let you fall under this particular rule? Yes, Your Honor. What we did or what occurred was in June of 2020, the Ashton case was dismissed. We then, in that supplemental complaint filed after that dismissal, brought that... Said the Ashton case is now settled. We did that... So that's the only thing that is the basis for the supplemental pleading, the fact that the other lawsuit was dismissed. Well, we also amended the ad allegations of more specificity. So the second letter complaint had a lot in it. Among the things in there was, in fact, bringing to the attention, to the court's attention, the Ashton settlement. I'd like to, if I could, reserve balance of my time for rebuttal. All right. And we'll hear from Mr. Bischofsky. Your Honors, Jeffrey Bischofsky for Ropes and Grave for the appellee and cross-appellant HIG. Because I have a cross appeal that raises different issues than what Mr. Wachs was just sort of in the middle and get to my client's appeal while there's still some time left. I do think a lot of things that I was going to cover on HIG's behalf have already been covered by the panel. The First Circuit described this situation and the dismissal of a case where... And can I ask you a question? Let me just ask you a question. It sort of seems a little bit to me when you argue that dismissal was proper under the first file rule, but it seems that you'd want us to remand it back in order to have it dismissed with prejudice. We want for you to remand it with an order that it's dismissed with prejudice based on the court's discretion to reach the additional arguments. What case law would suggest that that would be appropriate? I mean, if it's first to file is the rule and that is proper, then dismissal was proper. And why would we remand it back for consideration on the merits? Because we had an alternative argument that the court didn't reach that supports dismissal with prejudice under the Jennings case, 2015 Supreme Court case, the procedural posture is proper. And as recently as last year, I think in the Breland case, a panel from this court, which included Judge Wilson, I believe, said that it was also tempting to get to the merits of the underlying claim, but the court couldn't because a preliminary jurisdictional issue was in the way and there was no cross appeal. Here we have the cross appeal, so it's appropriate if the panel chooses to use its discretion. Right, but is it a jurisdictional issue or it's a procedural bar? I mean, if it's a procedural bar and you're correct, then why would we remand it back? Well, you can take care of it here, Your Honor. That's our point in our briefing and in our cross appeal. It is not a jurisdictional bar. I think it's clear, although this wasn't in dispute on the appeal, and there are some older cases that describe the first defile bar as jurisdictional. I think the Supreme Court's more recent case law in terms of what is jurisdictional in a federal statute is very clear. The U.S. versus Wong case, for example, which I believe involved the Federal Tort Claims Act and the there was a dispute over whether that was jurisdictional. The Supreme Court was very clear that unless Congress uses sort of the magic language in the statute referring to jurisdiction, then it's not going to be jurisdictional. It's just a sort of a ground rule, and that's what we have here. And I don't believe that this circuit has addressed that issue specifically, but I also don't think that at this point in the history of the jurisprudence at the Supreme Court it's controversial anymore. The overwhelming number of circuits that have considered these issues recently are unanimous, particularly with regard to the first defile bar. So it's not jurisdictional. Can you address the Rule 15d argument that opposing counsel made? Sure. I think one of the cases that I looked at that I think is highly relevant that relates to Rule 15d is the court's decision in Paris, which was on bank, and Judge Wilson was part of the group of dissenters in that case back in 2000. And the argument really was in that case, why can't we just use Rule 15 to amend to fix the problem of the plaintiff's apparent violation of the Prisoner Litigation Reform Act, I think it was, bar against bringing lawsuits, bringing actions, the same language that's at issue here, while prisoners are incarcerated if the claim doesn't involve bodily injury. And I think the answer is the same, which is that the False Claims Act here and the Prisoner Litigation Reform Act there trump Rule 15 to the extent there's any inconsistency. And I don't believe there's any inconsistency, but the timing rule in the Prisoner Act and the bar here are very specific and both basically say that if the plaintiff is in violation of the limitation when the case is filed, it's defective from junk street, it can't be fixed through amendment or adding parties or claims. And here, as I believe Judge Wilson was suggesting through his questioning, there's really nothing of substance that was even added in this case. To say something that the court could take notice of by looking at the docket, Ashton has been dismissed, or add a couple of paragraphs apparently about HIG. And frankly, we think most of that is adding slash HIG after surgery partners and describing the surgery partners, managers as quote, HIG controlled. It's not enough. And the language specifically says when a person brings an action under this subsection, no person other than the government may bring a related action based on the facts underlying action. And both actions really were the same, were they not? They absolutely were, Your Honor. And that's an issue that the panel didn't get to and neither did my colleague at the bar, but they were certainly related. Indeed, while counsel said that there wasn't necessarily any knowledge between the different relators, I think it's clear that the record in the case that's before the panel says otherwise. Both of the cases Ashton and Cho were investigated by the government at the same time and settled through the same document. It's also in the record that my client HIG received very early on in the process, a civil investigative demand and complied with that demand and were under investigation by the government. And so the purpose of the False Claims Act and these bars is not to provide the longest statute of limitations for a secondary relator, regardless of why they lost the race to the courthouse. The purpose, it's very clear, and I don't think it's controversial, of the False Claims Act and these bars is to make sure that relators expeditiously bring the information to the government's attention so that the government can investigate alleged false claims. And also, the second purpose, which I think is clear, is to cut down on a multiplicity of lawsuits. Without getting into whether it's a parasitic lawsuit or whether the second relator knew about the first relator, these things are unknowable and not part of the record. The rule is clear. The second person loses, their case should be dismissed, regardless of when it's unsealed. And this lack of knowledge is a two-edged sword. My client, HIG, probably knew something was going on since it's received a CID early on in the case, but it didn't have access to either Ashton or the Cho complaint. And they were complying with the government, but in a way that was sort of blind. And so, it's at least as unfair for my client to have to deal with a lawsuit that relates back to 2017 when it was unsealed in 2020. And on the first day that we saw that complaint when it was unsealed, we knew that it violated the first to file bar because we were aware of Ashton and when it was filed because that was also unsealed as part of the settlement. And my client did what it could in the first instance to get that case dismissed and Judge under the first to file bar. Your Honors, I'm happy to address a couple of the cases that I think are probably most helpful to the other side. They weren't discussed by the panel, Rockwell and Macro. But I'm interested in getting to my cross-appeal arguments. So, let me just quickly say, in Rockwell, that's the case, the Supreme Court case, where the Supreme that would have otherwise been barred by the public disclosure bar under the False Claims Act, but then because the relator wasn't an original source and the information was already out there publicly and the government came in, intervened and became a party. For purposes of the public disclosure bar, the court decided that there, the government, quote, brought the action later and wasn't subject to the problems that the individual relator had with the case. This is not a case like that. Here, there was one relator, the government never intervened, it never became a party on the caption of the HIG case and it was brought, the case was brought in 2017 when Ashton was pending. Macro presents a similar situation. There, the original plaintiff, who later became a relator, brought a fraud case that had nothing to do with the False Claims Act. He or she was not an independent private attorney general in that case. Much later on through the case, the court allowed amendment to permit the plaintiff to become a relator. At that point, according to the court, to this court, the False Claims Act action was first brought. And so, again, a very different case than this one because here, same relator, it was always a False Claims Act case, there's no doubt that it was brought in 2017 while Ashton was pending. We think that the court's ruling was correct and that the case should at least be dismissed without prejudice. If your honors don't grant our other cross appeal, then presumably the file and whatever is left of its claims, if anything, will go forward in front of the district court. Moving on to the cross appeal. Again, as I said earlier, the Supreme Court case of Jennings and this court's dicta, at least in Breland, strongly support the idea that this panel can get to our substantive attack on the pleadings and dismiss with prejudice. And that's what we're asking for. Now, I know that in this district or rather in this circuit, plaintiffs are entitled to at least one repleading under the case law. If this is amended, then it's going to have been I believe fourth pleading in this case. And so the one free strike rule has passed. The cases that I think are most relevant here in terms of the fact patterns and the allegations are Lisitsa from the Northern District of Illinois in 2013 and Heller from the Northern District of Georgia in 2021. In both of those cases, essentially, the court's held and we think correctly, that a relator who does nothing more than allege a parent or an affiliate controlled the primary wrongdoer and had some high level or macro management rights or responsibilities, but that does not allege in any detail, in any detail whatsoever, that could possibly meet Twombly, let alone rule nine's higher pleading standards. It doesn't say that the parent or the board members in this case, the HIG employees who are on the board, did anything in particular, said anything in particular, knew anything in particular about the fraud, doesn't tie the purported fraud to any specific dates, doesn't explain what necessarily what the motivations were that the parent company or the directors actually directed any fraud or in any way truly caused a false claim to be submitted. That doesn't state a case, doesn't state a case under Twombly, doesn't state a case under any of this circuit's law related to the False Claims Act or fraud. And the cases that purport to support the relator's position are actually helpful, we think, for HIG in this case. First of all, rust this court's recent decision. In that case, the manager of the nursing facilities, Levy, I think it was called, was actually boots on the ground managing the nursing care facilities on a daily basis and committing the fraud, directing the fraud. It makes perfect sense that they would be responsible for the fraud, just as much as the people at the company that they were managing. In Martino-Fleming, which is an HIG case where HIG is a defendant, much different than this one. The pleading in that case basically says that the whistleblower, who was an employee at the HIG, employee who was on the board, an HIG employee, was alleged to have been investigating the issue and the relator herself purportedly brought it to the HIG person's attention. It's always true that a corporation like HIG or any other corporation can only act through its individual employees and agents. Here, there is no allegation that any specific individual employed by HIG, whether they were on the board or not, was actually involved in the purported fraud. There is not a control person liability section to the False Claims Act case. There are commentators and academics who say there should be. There is not. This is not like a securities case where just being there, owning the company, having some sort of control rights, but not exercising them to conduct a fraud or direct it. It's not enough under the False Claims Act. The relator is alleged. Thank you. All right. Thank you, Mr. Brzozowski. Mr. Watts, you've reserved some time for rebuttal. You're on mute, Mr. Watts. Sorry. Thank you, Josh. The hazards of Zoom litigation. I'd like to start with the statutory construction argument just, again, to make clear that the language, the court shall dismiss. Congress put that language in E4. It did not put that language in B5. It did not mandate a dismissal. That would be the effect, though, of reading the statute the way the D.C. Circuit and the Second Circuit have. As it relates to this court's decision in Harris, this court in Harris on a split en banc decision determined that 15D was not applicable there because 15D was going contrary to the intent of the prisoner litigation statute at issue. Here, 15D would be supporting the intent of the False Claims Act. The intent of the False Claims Act is to allow for recoveries and to maximize recoveries by the government. Denying the right to supplement under 15D effectively because of the statute of limitations and the years that pass during an investigation between when complaints get unsealed effectively eliminates years of liability for tort fee, I'm sorry, fraud fees under that act and runs contrary to it. As it relates to the pleading issue, the trial court, the district court in this case, has discretion on whether to allow amendment or not and what Appalachia Cross Appellant is asking this court to do is to review our complaint, rule on the motion to dismiss substantively that the district court never got to, and take that discretion away from the district court to decide whether or not further amendment would be fuel or not. Remember, this is the first motion to dismiss that has been directed towards that complaint, that the prior amendments were not in the face of motions to dismiss, they were amendments as new developments occurred and as we learned new things. That said, we do know that the district court, when faced with the same argument, that is to say further amendment would be futile and that we didn't state a claim in the context of the motion to stay on discovery that HIG pursued below the district court rejected that and denied the motion to stay discovery while the second amendment complaint was being proposed by amendment. Thank you. All right, thank you Mr. Watson, Mr. Wachowski, and that concludes our docket for today and this court will be in recess until nine o'clock tomorrow morning. Thank you. Thank you very much.